Argued May 2, affirmed as modified August 17, reconsideration denied
October 19, petition for review denied December 13, 1977

In the Matter of the Marriage of
BABB, *Respondent,*
*and*
BABB, *Appellant.*
(No. 419-250, CA 7127)

567 P2d 599

James A. Cox, Lake Oswego, argued the cause and filed the brief for appellant.

Robert E. Nelson, Portland, argued the cause for respondent. With him on the brief was Richardson, Murphy & Nelson, Portland.

Before Schwab, Chief Judge, and Thornton and Richardson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

Husband appeals the dissolution of marriage decree contending the spouse and child support are excessive, the property division is inequitable and the wife should not have been awarded attorney fees.

The parties, in their early thirties, have been married for 15 years and have one son who was, at the time of trial, 14 years old. They both dropped out of high school to get married and have received little additional formal education. Since the marriage husband has worked for the same steel fabricating company. He started out as a janitor and is now the general manager and an officer of the corporation. The family has lived in the same house during their years of marriage, which is conceded by both to be an inadequate residence. They had adopted a modest life-style in order to invest in a farm and business ventures pursued by the husband. Their assets, although relatively substantial, are largely nonliquid.

Husband's annual salary is $20,800. In addition he has received periodic bonuses. In 1973 the bonus was $15,000 and $25,000 for each of the years 1975 and 1976. These bonuses were not paid in cash but are evidenced by corporate notes with a presently unpaid face amount of $35,000 upon which interest is paid annually. These notes have been renewed annually and are subordinated to other corporate notes. The notes were awarded to husband as his sole property.

Husband's employer provides a profit sharing pension plan for certain employes, the benefits payable upon death, retirement or termination of employment from the company. There is $22,782 credited to husband's profit sharing account. This pension plan was awarded to husband.

Wife had not been employed during the marriage until just prior to the parties' separation. She became employed full time as a clerk in a Fred Meyer store at $3.35 per hour.

■ Husband's employer is a closely held corporation with all stock being held by three persons. Husband owns ten percent of the stock which he purchased for $1,000 and the remaining 90 percent is held by the other two stockholders. The court awarded the stock to husband subject to a lien in favor of the wife equal to 50 percent of the proceeds from sale of the stock after deducting tax liabilities attributable to the sale. If the stock is not sold within ten years husband is to pay, in satisfaction of the lien, an amount equal to 50 percent of the then book value of the stock.

Husband contends there is no market for the stock of a closely held corporation and the decree will result in a forced sale. Additionally, he argues the alternative methods of discharging the lien on the stock are inconsistent. If the stock is sold the wife gets one-half of the proceeds after the tax liabilities are deducted. On the other hand, if there is no sale she is paid one-half of the book value without any consideration for tax consequences.

Faced with a substantial and thorny question of valuation the court adopted an acceptable method of dividing this asset. The husband is allowed complete control of the stock. He may sell it if he wishes or hold it and accumulate sufficient funds to discharge the lien at the end of the ten year period. Either alternative gives the parties an equal share of the value. If the stock is sold each receives one-half of the net proceeds and each shares in the tax liabilities. If the stock is not sold there is no tax to be paid and each of the parties realizes one-half of the value of the stock calculated on the basis of book value.

The parties in 1973 acquired 20 acres of land and a lease option on an adjoining 20 acre parcel. The option price is $40,000. The option was to expire in October 1976, but the record does not disclose whether it was exercised, extended or allowed to expire. The parties have made substantial improvements on the property by erecting fences and buildings and constructing

roads on the property. Most of the improvements are on the 20 acres covered by the lease option. It had been the intention of the parties, prior to the breakup of the marriage, to build a residence on this 40 acres and eventually operate it as a profitable farm.

The court awarded the farm to the parties as tenants in common subject to the provision that if the farm is sold wife is to receive one-third of the proceeds after deducting applicable indebtedness and costs of sale. If the farm is not sold within eight years wife is to receive an amount equal to one-third of the then net fair market value of land, equipment, crops, buildings and livestock. Husband was given sole right of occupancy and operation of the farm.

Husband contends the joint tenancy is unworkable in that wife is given a one-third interest not only in the land but also in the fluctuating stock of equipment and crops on the property and to be acquired in the future. This, he argues, is a potential area of conflict. In addition, he argues, there will be no incentive to improve the farm or operate it at a profit since one-third of all increments will accrue to wife.

■■ Under ordinary circumstances it is advisable in a dissolution of marriage to remove the parties from joint operation or control of assets in order to reduce potential conflicts. But this policy should not be followed where inequities would result. The value of this farm depends to a large extent upon whether the option to purchase is exercised and whether the goals for operation of the farm are realized. The wife is entitled to a share of the potential this investment had when purchased. The two-thirds share accorded to husband recognizes that he will be doing the work necessary to make the farm a successful venture. If his incentives are diluted by his desire to reduce the amount of the wife's share he must also suffer a reduction in the value of his two-thirds share. In the context of this rather complex problem of valuation

the method adopted by the trial court is an equitable division of the farm business.

The husband also operates a metal fabrication business which is not in competition with his employer. This business was awarded to the husband.

To equalize the property division the court awarded wife a lump sum of $30,000 denominated by the court as "lump sum alimony."[1] This amount is to be paid $5,000 within 90 days of the decree and the balance in payments not less than $75 per month for five years and then $300 per month until the balance is paid. The judgment is to bear interest of seven percent per annum on the unpaid balance.

Husband contends the $30,000 is part of an unequal property division and that payment of interest on the judgment will extend the payments to approximately 21 years and require husband to pay a total of $62,100.

In contesting the property division as being unequal husband argues the assets of the parties have a value much lower than the raw figures would indicate. For example, he argues the pension benefits will be subject to income taxes when paid and therefore the face amount should be discounted. The corporate stock of a closely held corporation, he contends, has no market and thus the actual cost of $1,000 or, at the maximum, 50 percent of the book value is a proper measure of its worth. The corporate notes evidencing his bonuses, he argues, are subordinated to other corporate obligations and should be discounted to approximately one-half their face amounts. His principal contention regarding asset values is that the value of the property awarded to him did not justify a $30,000 equalizing payment to the wife.

■ The court did not make any findings as to asset

---

[1]The traditional term "alimony" has been removed from the dissolution of marriage law by the legislature (ORS 107.105(1)(c)). This court has consistently used the term spouse or spousal support to denote what had previously been called alimony.

values. The court, however, noted a conflict between the evidence of value presented by the husband and information submitted by the husband in the form of financial statements to obtain several bank loans. Determining valuations from the testimony of the witnesses is principally a question of credit to be given the witnesses' analysis. In those situations we have traditionally deferred to the trial court's decision. The award of $30,000 to equalize the division of property reflects the court's assessment of the valuation evidence despite the fact no specific findings were made regarding value.

■ Considering that husband was awarded the pension fund, the bonuses in the form of corporate notes, the metal fabrication business, one-half of the value of the corporate stock and two-thirds interest in the farm, the $30,000 judgment given to the wife roughly equalizes the asset division.

We agree that the interest provision will place an undue financial burden on the husband and should be removed. It is true, as the wife argues, the payment schedule provides for minimum payments and husband may reduce the interest liability by making larger payments. However, the assets of the parties are largely nonliquid and husband would either have to borrow money to pay a substantial payment and incur additional interest expense or utilize a large portion of his monthly income in order to reduce the interest obligation. Following the payment schedule set out in the decree will give the wife monthly payments for approximately 12 years.

■ The wife was given custody of the child and husband is required to pay $250 per month as child support and $150 per month as spouse support for five years. He argues the child and spouse support should be reduced. Considering the relative incomes of the parties the amounts awarded are reasonable.

■ Wife was awarded $2,000 toward her attorney fees. Husband agreed the court could set an amount for

attorney fees if they are awarded but argues each party should pay their own attorney fees. In this case the wife will have to wait a substantial period of time before her share of the marriage property is realized. She has no other means of obtaining money to pay her attorney fees. The award of attorney fees is proper.

The decree is modified to provide husband is not required to pay interest on the lump sum awarded to the wife. The decree is affirmed in all other respects.

Affirmed as modified. No costs to either party.